# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

NICOLAS RAFAEL QUINTANA CARTAYA,

                  Petitioner,

vs.

MICHAEL BERNACKE, *et al.*,[1]

                  Respondents.

Case No.: 2:26-cv-00438-GMN-MDC

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

Pending before the Court is Petitioner Nicolas Rafael Quintana Cartaya's Petition for Writ of Habeas Corpus, (ECF No. 1).[2]  Federal Respondents Michael Bernacke, Pam Bondi, and Kristi Noem ("Federal Respondents") filed a Response, (ECF No. 8), to which Petitioner filed a Reply, (ECF No. 11).[3]  For the reasons discussed below, the Court GRANTS the Petition.[4]

## I.    BACKGROUND

Petitioner Nicolas Rafael Quintana Cartaya is a citizen of Venezuela who entered the United States on or about September 21, 2023, without inspection. (Notice to Appear ("NTA"), Ex. A to Fed. Resp., ECF No. 8-1); (I-213 at 2, Ex. A Fed. Resp., ECF No. 8-1).  Petitioner alleges that he surrendered himself to border patrol, (Pet. ¶ 42, ECF No. 1), and Respondents

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Acting U.S. Attorney General Todd Blanche is substituted for the currently named Pamela Bondi, and Secretary of Homeland Security Markwayne Mullin is substituted or currently named Kristi Noem.  The Clerk of Court is kindly directed to update the docket to reflect these substitutions.

[2] Also pending before the Court is Petitioner's Motion for Temporary Restraining Order, (ECF No. 5), to which Respondents filed a Response, (ECF Nos. 9, 10).  Because the Court grants the relief sought in the Petition, it denies the Motion for Temporary Restraining Order as moot.

[3] Respondent John Mattos also filed a Response, (ECF No. 20), indicating that he has no independent authority to release Petitioner, and thus takes no position on the relief sought.

[4] To the extent the Petition seeks attorney's fees and costs under the Equal Access to Justice Act ("EAJA"), Petitioner's counsel must file a post-judgment application that complies with the requirements of 28 U.S.C. § 2412(d)(1)(B).

state he was arrested at or near the Eagle Pass, Texas port of entry, (Fed. Resp. 7:10–11, ECF No. 8).  On September 23, 2023, Petitioner was served an NTA identifying him as "an alien present in the United States who has not been admitted or paroled," and charging him as subject to removal under 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"). (NTA, Ex. A to Fed. Resp.).  He was then released from custody on his own recognizance. (I-213 at 2, Ex. A to Fed. Resp.).  Petitioner applied for asylum and Withholding of Removal through an I-589 that remains pending. (*Id.*).

On December 26, 2025, Petitioner was arrested in Bozeman, Montana for charges that have now been dismissed. (*Id.*).  Upon his release in Montana, Petitioner was arrested by ICE and taken to Nevada Southern Detention Center where he remains detained. (Pet. ¶¶ 44, 49).  Following his transfer to Nevada Southern Detention Center, Petitioner states that ICE issued a custody determination to continue Petitioner's detention without an opportunity to post bond. (*Id.* ¶ 47).

Petitioner had a master calendar hearing before an Immigration Judge ("IJ") on March 5, 2026. (Joint Status Report 1:17–18, ECF No. 7).  At that hearing, Petitioner's charges of removability contained on the NTA were sustained. (*Id.* 1:18–19).  Petitioner's I-589 application remains pending, and the parties informed the Court that his final hearing on the merits of his application was scheduled for April 17, 2026. (*Id.* 1:19–22).  According to the EOIR Automated Case Information available on the date of this Order, Petitioner's application remains pending, and he now has an individual hearing in front of an IJ scheduled for June 1, 2026.[5]

---

[5] The Court takes judicial notice of the information on Petitioner's EOIR Automated Case Information page because it may take judicial notice of information posted on official government websites. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998–999 (9th Cir. 2010); Fed. R. Evid. 201 (allowing a court to take judicial notice of a fact not subject to reasonable dispute in that it is capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned).

With this Petition, Petitioner challenges his continued detention and requests either a constitutionally adequate bond hearing or immediate release. (*See generally* Pet.).

## II.   <u>LEGAL STANDARD</u>

### A. Habeas Petitions

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3).  A district court's habeas jurisdiction includes challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

### B. Statutory Detention Scheme

Under the INA 8 U.S.C. §§ 1101 *et seq.*, two statutory provisions generally govern the government's authority to civilly detain noncitizens during the pendency of removal proceedings: 8 U.S.C. §§ 1225(b) and 1226.  In *Jennings v. Rodriguez*, 583 U.S. 281 (2018), the Supreme Court explained that § 1225 generally governs "at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible." *Id.* at 287.  In contrast, § 1226 "generally governs the process of arresting and detaining" noncitizens already "inside the United States." *Id.* at 288.

8 U.S.C. § 1225 authorizes the government to detain certain noncitizens seeking admission into the United States. *See Jennings*, 583 U.S. at 289.  Section 1225(b) applies to "applicants for admission" to the United States, defined as a noncitizen "present in the United States who has not been admitted or who arrives in the United States[.]" 8 U.S.C. § 1225(a)(1).

"[A]pplicants for admission fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2)." *Jennings*, 583 U.S. at 287.

Section 1225(b)(1) applies to noncitizens who are "initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation." *Id.* (citing § 1225(b)(1)(A)(i)). Noncitizens who fall under § 1225(b)(1) are "normally ordered removed 'without further hearing or review' pursuant to an expedited removal process." *Id.* (citing § 1225(b)(1)(A)(i)). Section 1225(b)(2) is broader and "serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)." *Id.* Applicants for admission under either § 1225(b)(1) or § 1225(b)(2) are subject to mandatory detention. Applicants for admission face mandatory detention and may only be released on parole "for urgent humanitarian reasons or significant public benefit." *Id.* § 1182(d)(5)(A); *Jennings*, 583 U.S. at 287.

## III.   DISCUSSION

Petitioner has been in ICE custody for approximately four months without a bond hearing while in removal proceedings. He argues that his detention without a bond hearing under 8 U.S.C. § 1225(b)(2) violates the plain language of the INA, the implementing regulations, and his due process rights. (Pet. ¶¶ 50–60). Federal Respondents respond that Petitioner is correctly being held under § 1225(b)(2). (Fed. Resp. 7:23–20:4). Even if the Court were to find that Petitioner is not detained under § 1225(b), Federal Respondents also argue that the Petition must be denied because Petitioner is subject to mandatory detention under § 1226(c). (*Id.* 20:5–21:7). Petitioner argues that the Laken Riley Act is unconstitutional as applied to him.

### A. Ripeness and Exhaustion

In their introduction, Federal Respondents briefly raise the argument that this Petition should be denied because it is not yet ripe. (Fed. Resp. 2:18–3:3). This is so, according to

Federal Respondents, because Petitioner has not filed for custody redetermination and does not know whether the Immigration Judge will determine whether they have jurisdiction to hear the request. (*Id.*). Petitioner does not deny that he has not requested a bond redetermination hearing. (*See generally* Reply).

"Article III's ripeness doctrine is designed to 'prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements.'" *Flaxman v. Ferguson*, 151 F.4th 1178, 1184 (9th Cir. 2025) (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580 (1985)). "Constitutional ripeness equates with Article III's injury-in-fact requirement for standing." *Id.* at 1184–85. "The well-worn prerequisites are an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual and imminent, not conjectural or hypothetical." *Id.* at 1185 (citation modified) (quoting *Twitter, Inc. v. Paxton*, 56 F.4th 1170, 1173 (9th Cir. 2022)).

Here, Petitioner is suffering an injury in fact due to his current detention. There is nothing abstract or hypothetical about this dispute, and the fact that an IJ has not yet determined his eligibility for bond does not change that fact. *See Alvarado v. Mattos*, No. 2:26-CV-00416-APG-DJA, 2026 WL 963227, at *2 (D. Nev. Apr. 9, 2026) (citing *Galvan v. Hermosillo*, No. 2:25-CV-02349-TMC, 2025 WL 3484755, at *2 (W.D. Wash. Dec. 4, 2025)) (finding the noncitizen detainee's habeas petition was ripe for review where an IJ had not determined the petitioner's eligibility for bond).

To the extent Federal Respondents meant that Petitioner must exhaust his administrative remedies before filing his Petition, the Court finds he does not. First, Federal Respondents cite no authority to support this argument. Moreover, exhaustion here is a prudential, rather than jurisdictional, requirement. *See Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017). A court may require prudential exhaustion where:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Id.* (quoting *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007)).  But even if these factors weigh in favor of prudential exhaustion, the Court may waive the requirement if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Id.* (quoting *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004)).

Here, the Court finds that Petitioner's claims fall into the futility exception.  First, Federal Respondents contend that *Matter of Q. Li*, 29 I&N Dec. 66 (B.I.A. 2025), applies to require Petitioner's mandatory detention.  In *Matter of Q. Li*, the Board of Immigration Appeals ("BIA") held that a noncitizen "who is arrested and detained without a warrant while arriving in the United States, whether or not at a port of entry, and subsequently placed in removal proceedings, in detained under [8 U.S.C. § 1225(b)], and is ineligible for any subsequent release on bond under [8 U.S.C. § 1226(a)]." *Id.* at 69.  Given *Matter of Q. Li* is a precedential decision, the IJ is likely to conclude that Petitioner is detained pursuant to § 1225(b) under that precedent.  And because, as a statutory matter, § 1225(b) "mandate[s] detention" and does not allow for release on bond, *Jennings*, 583 U.S. at 297, any bond request under that statute would be futile. *See Vasquez-Rodriguez v. Garland*, 7 F.4th 888, 896 (9th Cir. 2021) ("[W]here the agency's position appears already set and recourse to administrative remedies is very likely futile, exhaustion is not required.").  The Court therefore waives any exhaustion requirement.

Moreover, Petitioner's due process claim also falls into the futility exception "carved for constitutional challenges to . . . [DHS] procedures." *Iraheta-Martinez v. Garland*, 12 F.4th 942, 949 (9th Cir. 2021) (quoting *Sola v. Holder*, 720 F.3d 1134, 1135 (9th Cir. 2013) (per curiam) (alterations in original)).  The IJ and BIA also cannot consider Petitioner's constitutional

challenge to the Laken Riley Act.  Accordingly, the Court will consider the merits of the full Petition.

### B.  Section 1225(b)

Federal Respondents next assert that 8 U.S.C. § 1225(b), rather than § 1226(a), governs Petitioner's detention and requires his detention without a bond hearing.  While Petitioner contends that he will be denied bond under *Matter of Yajure Hurtado*, Federal Respondents assert instead that *Matter of Q. Li* requires mandatory detention of Petitioner.  The Court agrees that *Matter of Yajure Hurtado*, and the class judgment in *Jacobo-Ramirez*, do not apply to Petitioner because he was arrested near the border.  Still, the Court concludes that § 1225(b) cannot reasonably be found to govern Petitioner's detention.

As described above, detention of noncitizens is governed by 8 U.S.C. §§ 1225–26. Section 1226(a) provides the "default rule," allowing discretionary detention of noncitizens "already present in the United States." *Jennings*, 583 U.S. at 303.  In *Jennings*, the Supreme Court drew a clear line between the two provisions: § 1225 "applies primarily to [noncitizens] seeking entry into the United States," while § 1226 governs "the process of arresting and detaining" noncitizens "already in the country." *Id.* at 287–88.  Applicants for admission are generally subject to mandatory detention under § 1225(b) and may be released only on parole "for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A); *Jennings*, 583 U.S. at 287.  The Ninth Circuit has also described § 1226 as "provid[ing] the general process for arresting and detaining [noncitizens] who are present in the United States and eligible for removal." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022).

Here, Federal Respondents rely on nonbinding, out-of-circuit authority to argue that because Petitioner is an "applicant for admission" as defined in 1225(a), he is therefore "seeking admission" within the meaning of § 1225(b)(2)(A) and must be detained pending

removal proceedings. (Resp. 8:12–16:19).  Courts in this District, including this Court, have consistently rejected this argument.

Moreover, Federal Respondents' argument directly conflicts with the way the government has treated Petitioner as subject to discretionary detention under § 1226(a) from the outset.  Petitioner's NTA shows that he was not treated as seeking admission under § 1225, and the issuing office did not designate Petitioner as an "arriving [noncitizen]." (NTA, Ex. A to Fed. Resp.).  Instead, he was designated as a "[noncitizen] present in the United States who has not been admitted or paroled." (*See id.*).  This is notable because "arriving [noncitizen]" is the operative language used to define the scope of the § 1225(b)(2)(a) in the implementing regulation. *See* 8 C.F.R § 235.3(c)(1); *see also Martinez v. Hyde*, 792 F. Supp. 3d 211, 218 (D. Mass 2025) (concluding "arriving [noncitizen]" language is synonymous with § 1225).  Further, Petitioner was released on an Order of Release on Recognizance ("OREC"), as noted in his I-213. (I-213 at 2, Ex. A Fed. Resp.).  Given OREC is only permitted under § 1226(a), not § 1225(b), it is clear that the government has treated Petitioner as subject to discretionary detention from the outset.

Petitioner has resided in the United States for approximately two and a half years.  After his initial detention, he was released on an OREC. *See Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115 (9th Cir. 2007) ("It is apparent that the INS used the phrase 'release on recognizance' as another name for 'conditional parole' under § 1226(a).").  Nothing in the record supports treating Petitioner as a noncitizen seeking admission subject to § 1225(b)'s mandatory detention scheme.  Thus, the Court concludes that Petitioner's detention is not governed by § 1225(b).

### C.  Section 1226(c)

Federal Respondents next argue that, even if the Court concludes § 1225(b) does not govern Petitioner's detention, Petitioner is still ineligible for release under the Laken Riley Act.

The parties agree that Petitioner was charged with and arrested for robbery under Montana Code 45-5-401,[6] and the parties do not dispute that the Laken Riley Act applies here.[7] Accordingly, the Court assumes the Laken Riley Act applies and examines Petitioner's argument that the Act is unconstitutional as applied to his circumstances.

Section 1226(c) provides that detention is mandatory for certain nonresidents. Prior to the recent amendment, § 1226(c) provided that DHS "shall take into custody" nonresidents who "hav[e] committed" certain enumerated offenses, *see* 8 U.S.C. § 1226(c)(1)(A)–(b), have "been sentence[d] to a term of imprisonment for at least 1 year" for certain enumerated offenses, *id.* § 1226(c)(1)(C), or who are members or participants in terrorist activities or organizations, *id.* § 1226(c)(1)(D). In such cases, the Supreme Court has found that detention without a bond hearing is justified "for the brief period necessary for [the nonciziten's] removal proceedings." *Demore*, 538 U.S. at 513.

The Laken Riley Act, Pub. L. 119-1, 139 Stat. 3 (2025), added a new subparagraph: 8 U.S.C. § 1226(c)(1)(E). That new subparagraph makes detention mandatory for noncitizens who satisfy two conditions: (1) the noncitizen must be "inadmissible under paragraph (6)(A), (6)(C), of (7) of section 1182(a) of this title,"[8] and (2) must "[be] charged with, . . . arrested for . . . convicted of, admit[] having committed, or admit[] committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or" certain violent offenses. 8

[6] Federal Respondents fail to provide evidence of the arrest or charges outside of a note in the I-213, which does not constitute a record of the alleged charges in state court. The Court nevertheless proceeds on the assumption that Petitioner was charged with and arrested for robbery because Petitioner does not contest the allegation.

[7] Other than one line—"[e]ven if the terms of the LRA were properly triggered (it appears they were not)"— Petitioner advances no argument that the Laken Riley Act does not apply. (Reply 3:4).

[8] Those grounds of inadmissibility are: "presen[ce] in the United States without being admitted or paroled," 8 U.S.C. § 1182(a)(6)(A)(i); "seek[ing] to procure . . . a visa, other documentation, or admission into the United States" by fraud or misrepresentation, *id.* § 1182(a)(6)(C)(i); and failure to possess "a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by this chapter," *id.* § 1182(a)(7)(A)(i)(I).

U.S.C. § 1226(c)(1)(E).  Detention is mandatory under the Laken Riley Act, even if a noncitizen has not been convicted of the enumerated offenses.

The parties agree that the Laken Riley Act applies because the petitioner was arrested, which fulfills the requirement in § 1226(c)(1)(E) for mandatory detention based on an arrest, without needing a conviction or pending charges. (Fed. Resp. 20:2–14); (Reply 4:14–5:2). There is also no dispute that the charges against him have been dropped.  "[S]everal courts within the Ninth Circuit have found that the Constitution cannot permit mandatory detention without a bond hearing under § 1226(c) where the predicate charge has been dismissed." *Montalvan Reyes v. Warden*, No. 1:26-v-0441-DC-JDP, 2026 WL 760264, at *3 (E.D. Cal. Mar. 18, 2026) (collecting cases).  As explained below, the Court agrees with other courts that have confronted this issue and concludes that, after the charges were dismissed, Petitioner was no longer subject to mandatory detention under § 1226(c).

### 1. Due Process

Under the Fifth Amendment, "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V.  Though noncitizens do not enjoy constitutional protections outside the borders of the United States, once a noncitizen "enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693.  Thus, "[i]t is well established that the Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993).  But the "recognized liberty interests of U.S. citizens and [noncitizens] are not coextensive: the Supreme Court has 'firmly and repeatedly endorsed the proposition that Congress may make rules as to [noncitizens] that would be unacceptable if applied to citizens." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022) (quoting *Demore*, 538 U.S. at 522).

As an initial matter, the Court finds that a petitioner may bring an as-applied constitutional challenge to the application of § 1226(c). *Nielsen v. Preap*, 586 U.S. 392, 420 (2019) ("Our decision today on the meaning of [§ 1226(c)] does not foreclose as-applied challenges—that is, constitutional challenges to applications of the statute . . . ."). To determine whether detention violates due process, courts apply the three-part test set out in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See Rodriguez Diaz*, 53 F.4th at 1203–07 ("Ultimately, *Mathews* remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context.").[9]  Under *Mathews*, "identification of the specific dictates of due process generally requires consideration of three distinct factors": (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

First, the private interest at stake here "is the most elemental of liberty interests—the interest in being free from physical detention." *Hamdi*, 542 U.S. at 529; *see also Rodriguez Diaz*, 53 F.4th at 1207 ("[A]n individual's private interest in freedom from prolonged detention is unquestionably substantial."). Further, Petitioner's private interest is not diminished by a final order of removal, nor by having already been afforded process such as an individualized bond hearing. *See id.* at 1208 (finding petitioner's liberty interest was diminished by the fact

_____

[9] The Ninth Circuit in *Rodriguez Diaz* "assumed without deciding" that the *Mathews* test applies in due process challenges to immigration detention. 53 F.4th at 1207.  However, the *Rodriguez Diaz* court noted that other circuits have applied *Mathews* in considering due process challenges to immigration detention. *Id.* at 1204–05 (citing *Miranda v. Garland*, 34 F.4th 338 (4th Cir. 2022); *Hernandez-Lara v. Lyons*, 10 F.4th 19 (1st Cir. 2021); *Velasco Lopez v. Decker*, 978 F.3d 842 (2d Cir. 2020)).  The court also explained that the Ninth Circuit has regularly applied *Mathews* in due process challenges to removal proceedings. *Id.* at 1206 (citing *Cruz Pleitez v. Barr*, 938 F.3d 1141, 1145–46 (9th Cir. 2019); *Flores-Chavez v. Ashcroft*, 362 F.3d 1150, 1160–61 (9th Cir. 2004); *Martinez-de Bojorquez v. Ashcroft*, 365 F.3d 800, 805 (9th Cir. 2004).  Accordingly, the Court will apply the *Mathews* test here.

that he was subject to a final order of removal, had already been afforded an individualized bond hearing, and had additional process available to him through additional bond hearing upon a showing of materially changed circumstances).

The risk of erroneous deprivation of Petitioner's liberty is also high, especially given Petitioner has likely not received any hearing, either pre- or post-detention. There is no evidence that "*any* procedure is currently available for Petitioner to challenge the lawfulness of his detention under § 1226(c)." *E.C. v. Noem*, No. 2:25-cv-01789-RFB-BNW, 2025 WL 2916264, at *10 (D. Nev. Oct. 14, 2025). Because § 1226(c) requires mandatory detention, any request for a bond hearing before an IJ would be denied for lack of jurisdiction to consider bond. *See id.* Indeed, "[t]he BIA does not have jurisdiction to determine the constitutionality of the statutes it administers." *Sola v. Holder*, 720 ZF.3d 1134, 1135 (9th Cir. 2013) (quoting *Padilla-Padilla v. Gonzales*, 463 F.3d 972, 977 (9th Cir. 2006)). Thus, the only process available to Petitioner to challenge the constitutionality of § 1226(c)(1)(E)(ii) as applied to him is through a habeas petition before this Court.

Further, Petitioner will not be provided process through the criminal system to contest the basis for his arrest because the charges have now been dropped. The Supreme Court has previously addressed the constitutionality of § 1226(c) in *Demore*, 538 U.S. 510. There, the Court upheld the constitutionality of a mandatory detention procedure as "applie[d] to a class of noncitizens who had already been convicted (beyond a reasonable doubt) of committing certain serious crimes." *Hernandez-Lara v. Lyons*, 10 F. 4th 19, 35 (1st Cir. 2021). This holding specifically addressed the due process rights of individuals whose convictions "were obtained following the full procedural protections our criminal justice system offers." *Demore*, 538 U.S. at 513. Here, in contrast, § 1226(c) as amended by the Laken Riley Act and applied to Petitioner would mandate his detention even though the procedural protections of our criminal

justice system are not available to him; since his charges have now been dropped, he will have no opportunity to contest the basis for his arrest.

Meanwhile, "[t]he additional procedure of an individualized bond hearing would substantially mitigate the risk . . . of erroneous deprivation of Petitioner's liberty," especially one that would require the Government to establish that Petitioner presents a flight risk or danger to the community even though his criminal charges have been dropped. *E.C.*, 2025 WL 2916264, at *10.

The final factor of the *Mathews* test considers the "government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335. The Court acknowledges that the government's interests in enforcing immigration laws, including "protecting the public from dangerous criminal" noncitizens and "securing [a noncitizen's] ultimate removal," are "interests of the highest order." *Rodriguez Diaz*, 53 F.4th at 1208. But Respondents have not explained how detaining Petitioner without due process serves these interests, especially where the charges have now been dropped. In fact, limiting detention to noncitizens who are shown to be dangerous or a flight risk may serve the government's and the public's interest by limiting "the fiscal and administrative burdens attendant to immigration detention." *E.C.*, 2025 WL 2916264, at *11; *see also Hernandez v. Sessions*, 872 F.3d 976, 996 (9th Cir. 2017) (noting that in 2017 "the costs to the public of immigration detention are staggering: $158 each day per detainee, amounting to a total daily cost of $6.5 million. Supervised release programs cost much less by comparison: between 17 cents and 17 dollars each day per person.").

On balance, the *Mathews* factors weigh in favor of Petitioner, and the Court therefore finds that Petitioner's detention under § 1226(c) with a bond hearing violates his due process rights.

///

### 2. Scope of Relief

Based on the above analysis, Petitioner has been unlawfully detained without a bond hearing for over 4 months. Consistent with its broad equitable authority to fashion a remedy for unlawful detention "as law and justice require," the Court orders Respondents to provide a constitutionally adequate bond hearing within seven days or immediately release him from custody on his own recognizance with no substantial constraints on his liberty. *See Sanders v. Ratelle*, 21 F.3d 1446, 1461 (9th Cir. 1994) ("A federal court is vested with the largest power to control and direct the form of judgment to be entered in cases brought up before it on habeas corpus. The court is free to fashion the remedy as law and justice require[.]") (internal quotation marks and citations omitted). At the bond hearing, the government will bear the burden of proving by clear and convincing evidence that Petitioner poses a danger or flight risk. *See Carballo v. Andrews*, No. 1:25-CV-00978-KES-EPG (HC), 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025) (ordering the government to provide a post-deprivation bond hearing, where the government bears the burden of proof, to § 1226(c) detainee); *Perera v. Jennings*, 598 F. Supp. 3d 736, 744 (N.D. Cal. 2022) (same); *Pham v. Becerra*, 717 F. Supp. 3d 877, 886 (N.D. Cal. 2024) (same).

### IV.    <u>CONCLUSION</u>

**IT IS HEREBY ORDERED** that Petitioner's Petition for Habeas Relief, (ECF No. 1), is **GRANTED.**

**IT IS FURTHER ORDERED** that Petitioner's Motion for Temporary Restraining Order, (ECF No. 5), is **DENIED as moot.**

**IT IS FURTHER ORDERED** that Respondents must provide Petitioner with a constitutionally adequate bond hearing where the government bears the burden of establishing dangerousness or flight risk by clear or convincing evidence no later than **<u>May 12, 2026.</u>**

**IT IS FURTHER ORDERED** that if bond is granted, Respondents are **ORDERED** to **IMMEDIATELY RELEASE** Petitioner from detention.  Due to the difficulties other petitioners have faced in attempting to satisfy bond through ICE payment portals, **IT IS FURTHER ORDERED** that Petitioner must be afforded until **June 1, 2026,** to satisfy any monetary bond conditions.

**IT IS FURTHER ORDERED** that if a constitutionally adequate bond hearing is not conducted by **May 12, 2026**, Respondents must **IMMEDIATELY RELEASE** Petitioner from custody on his own recognizance.  Respondents are prohibited from imposing release conditions that substantially interfere with Petitioner's liberty, such as electronic monitoring, without having established the reasonableness of those restrictions, by clear and convincing evidence, at a pre-deprivation hearing.

**IT IS FURTHER ORDERED** that Respondents are **permanently enjoined** from detaining Petitioner under 8 U.S.C. § 1225(b)(2)(A) or § 1226(c)(1)(E).

**IT IS FURTHER ORDERED** that the Parties shall file a **joint status report** by **May 14, 2026**, that details whether the bond hearing occurred, whether bond was granted or denied, and, if denied, the reasons for that denial.  If bond was granted or the bond hearing has not occurred, the status report must confirm the date and time of Petitioner's release from detention in compliance with this Order.  If bond is denied, Federal Respondents must (1) attach that order of the immigration court to the joint status report, and (2) provide the contemporaneous record of the bond hearing to Petitioner's counsel immediately upon request.

///

///

///

///

///

**IT IS FURTHER ORDERED** that pursuant to Federal Rule of Civil Procedure 25(d), Acting U.S. Attorney General Todd Blanche is substituted for the currently named Pamela Bondi, and Secretary of Homeland Security Markwayne Mullin is substituted or currently named Kristi Noem.  The Clerk of Court is kindly directed to update the docket to reflect these substitutions.

**DATED** this __5__ day of May, 2026.

_____
Gloria M. Navarro, District Judge
United States District Court